thank you very much your honor may I please the court my name is John Morrison I am counsel for the appellant Barbara Gibson as personal representative for the estate of deceased husband Johnny Gibson and the heirs to the estate I would like to reserve one minute of rebuttal time this is a medical negligence wrongful death case involving a failure to diagnose acute heart disease Johnny had suffered chest pain for two months while working on a ranch in Montana he and Barbara went to the Community Health Center in Lewistown Montana and he complained of chest pain heartburn pain and pressure between his shoulder blades he had a history years ago of gallstones so the nurse practitioner sent him to the hospital would be tested for that she did not do a heart workup sent him home with opioid pain pills a week later when the family was starting to drive back to Colorado at the end of the summer where to their home he had a heart attack he was taken to st. Vincent Hospital in Billings they worked heroically over a period of eight hours or so to save his life but he died on the operating table roughly $165,000 in the bill with itemized expenses is at er 65 three months later on December 16 2015 the charges were forgiven under the hospital's charity program this is reflected at the end of the bill at er 77 Barbara brought this action for the estate herself and the adult children the government admitted liability shortly before trial comparative negligence and damages were tried the district court found no comparative negligence and awarded roughly five hundred and seventy eight thousand dollars in damages for lost earnings to the estate loss of household services and non-economic damages totaling two hundred and fifty thousand dollars which is the statutory limit in Montana the court awarded no damages for the reasonable value of medical services caused by the negligence on grounds that the hospital forgave the bills under their charity program three months after they were incurred history court relied on the Newberry and Conway cases in Montana which are two MedPay insurance cases and brushed aside the meek case which appellants contend your honor was here this appeal is governed by meek which limited Newberry and Conway and which corrected misunderstandings that had come out in the Chapman and Willink cases in the federal district court in Montana a number of facts in meek are strikingly similar to this case number one meek was a wrongful death case two meek incurred somewhat less than two hundred thousand dollars in medical expenses before she died three the hospital wrote off more than one hundred thousand dollars of those bills meek also happened to have Medicare and Blue Cross Blue Shield in that case the piece only covered a third of her bills the district court excluded the bills or purposes of the reasonable value of medical expenses as an item of damages and granted partial summary judgment against me as an element because she did not pay any of the bills out of pocket five the district court in that case cited Newberry and Conway as the decision the Montana Supreme Court granted supervisory control and reversed the district court both on the motion and limiting to exclude the bills as evidence of the reasonable value of medical expenses and reversing the district court as to partial summary judgment on the element of medical expenses as an element of damages meek held that medical bills are admissible specifically for the purpose of proving the reasonable value of medical services rendered which is an element of damages that has been recognized in Montana for many decades as the meek court said and I quote ultimately there is a factual dispute in the case over the nature of the bills presented by the medical providers and whether they represent a reasonable value of the services provided the existence of genuine issues of material fact precludes summary judgment so let me just ask you why should she be allowed to recover the medical expenses at the hospital or gave there are several reasons for that but we medical bill is evidence of the reasonable value of my question for you though is the hospital forgave the bill right yes that right that's correct your honor it didn't from what I could tell from reading the record in the briefs the hospital did not reserve it a right to come after her if she in the she recovered against the third-party tort fees is that right that's correct your honor okay so why should she be allowed to recover that money well I would answer in two ways your honor first but wouldn't that be able to say the case on a sort of a windfall well the windfall argument has been addressed for a long time in the common law of collateral source there's if there's going to be a windfall better that it be enjoyed if at all by the innocent injured party rather than the tortious wrongdoer and the government here stands in the shoes of the wrongdoer but from another standpoint in what sense is it a government as tortfeasor that is to say a tortfeasor should make should have to pay everything that the injured person lost and here the injured person did not lose what they had to pay to the hospital because they didn't have to pay anything to the hospital so it's not an offsetting windfall is it I mean how can you legitimately say the government gets a windfall if it doesn't have to fork over the unpaid bill the way that the wrongdoer would get a windfall is that there is an element of damages in Montana it is recognized historically in the Anderson case in the Kunky case and MPI veteran instructions 25.07 of the under Montana law not an element of damages that depends on the amount paid we cited the Kunky case from the 1980s that expressly says no statute and no case law requires the payment of medical bills before the payment can be recovered in a wrongful death case this is the law in Montana and so if that element of damages is not assessed against the wrongdoer and then it is a windfall to but we've also cited public policy arguments your honors and those include several very important things one it is that if this plaintiff had not been a poor uninsured person if this plaintiff had been an insured person then they would have gotten the reasonable value of the medical services the judge would have allowed the bills in under me to determine what the reasonable value of medical services was there would have been a collateral source hearing then there would have been a mini poll analysis and it's very possible that under the $250,000 general damage cap the court would find that the plaintiff was not made whole and the plaintiff would not have to repay therefore we have a poor uninsured person who gets less than what a more affluent privileged covered person I'm sorry okay that last part sounded as though you were saying there would be a procedure where the insurance company would not be able to get the amount that was assessed as damages because of what the insurance paid out that is the way I would have thought of it is if the insurance covered a hundred thousand in medicals and the court awards a hundred thousand in medicals then the insurance company is going to get that back from the victim were you saying there's a procedure where that doesn't happen that's correct your honor in Montana the collateral source rule would set forth at 27 1308 Montana code and it provides that all of these damages are awarded in the trial and then subsequent to the trial there is a collateral source hearing and the judge makes a determination if the plaintiff was made whole and only if the plaintiff was made whole does the collateral source have to be repaid and so if if there is a plaintiff that has insurance or Medicare or Medicaid then that obtains if there is a plaintiff that has nothing then then there was no collateral source but in what in what circumstance would the quote plaintiffs not have been made whole if an award is given for medical amounts paid out that is the equivalent of it and has already been paid by the theoretical possibility or does it happen all the time that afterwards the insurance company comes up dry and the plaintiff gets to keep that money that just sounds very odd to me now I say I'm not from Montana but I'm here to help you so you can can you give me some help there as to whether it's just theoretical or why it would happen well it's not a matter of record your honor but as a in this particular case one good reason to think that the trial judge if they were doing and if he was doing a made whole analysis might determine that the plaintiff was not made whole is that there's a two hundred and fifty thousand dollar damage cap on non-economic damages and it so happens that the trial courts allocation of non-economic damages was exactly two hundred and of the decedent for which the judge awarded zero for the grief and loss of society companionship of the surviving spouse for the grief and loss of society companionship of each of the two adult children which are compensable in Montana and all of that can't add up to more than two hundred fifty thousand dollars so the court allocated damages in exactly the amount of two hundred fifty thousand dollars excuse me judge just go ahead and finish up and then we're gonna hear from the governor you finish your sentence you were what you were saying yes I'm finished okay let's hear from the governor I'll give you a minute for rebuttal may I please the court tend to talk of the district of Montana on behalf of the United States that the district court here correctly observed and this is an excerpt to the record page 28 citing Montana law that the the purpose of of tort is to award damages that puts the injured party back as close as possible to the to the pre-tort position neither better nor worse here it's really undisputed that what what the plaintiffs are asking for in this case is an award of the hundred sixty-five thousand dollars of medical expenses that they weren't didn't have to pay and won't be asked to pay in the future and the district court was correct I'm just asking I look in the record to see if there was any documentation that when the hospital covered this under its chair in our program that they weighed any right to seek recovery in the event she recovered against the tort fees was there any documentation of that in the record I I don't I don't believe there's any any documentation of that beyond beyond what's you know at excerpts of the record page 65 at the beginning of that of that bill is is the amount saying the letter saying that all you know you're the accounts are settled here and the other fact that I think is is important and I it's related to your question although I don't know it's correctly responsive is as the court notes that excerpts of the record page 18 and it and referencing the transcript this isn't a case where miss Gibson had been had been billed for months and months it's clear from the record that the only bill that she received is is this zero balance bill and and again that that just goes to the sort of basic tort principle here which is there really was never a detriment to the injured party here the the the amount that she was billed the bill that she received was was for zero dollars can I ask you to help me understand how this would normally work in Montana I will confess that I didn't find either your rely mostly on the case law and it just doesn't seem to me that the case has helped us very much in this particular instance so let me describe for you how I think this should work and it's adverse to your position so I want you to tell me why I might have Montana law wrong first of all you would concede I gather that under the normal traditional common law lateral source doctrine the plaintiff here could recover the full value of the medical services regardless of whether they were forgiven or whether somebody else paid the amount do you concede that I'm talking about under the traditional common law yeah I think that's correct okay so and is that the the background legal principle that governs in Montana does Montana adopted that aspect of the common law no the Montana uses there's a statutory collateral so exactly okay so that's what I'm trying to figure out so the background rule would normally allow the plaintiff to recover potentially here all 165,000 what you what you would then say though is that Montana has displaced the traditional common law rule to the extent that this 27-1 308 applies is that right okay let me I'm sorry I think I need to revise my answer to your first question because the the collateral source rule we don't think the collateral source you even get to the common law collateral source rule in this case where what you have is an adjustment to the to the bill well let me just let me stop you there because you're wrong about the common law rule the common law rule is very clear that it doesn't matter from the defendant standpoint what happens to the amount the plaintiff was billed whether it was forgiven and in full whether it was paid in part by insurance the common law rule is that the defendant really doesn't get any benefit from any of that the plaintiff just gets to recover okay so what I'm trying to figure out is to what extent is that the background rule in Montana and if that is in fact the traditional common law rule has been adopted there I'm guessing that the only way you could prevail is if you could show that that rule has been displaced in some fashion by the statute right if that is the common under that premise that that is that the common law rule would apply then then then the question would be it is a statutory way the Montana works work around that and and again we would say if you looking if you look at it in that respect if you look at it in terms of saying those bills are incurred at the at the moment of service or those costs are incurred at the moment of service then then you would look to the statutory Montana statutory law and which says that that all of that comes in and the the entire amount of the bills comes in the fact that they were paid would stay out in front of a bench trial but then afterwards that would be reduced under under the collateral source statutory lateral source rule if if the amount forgiven qualified as a collateral source payment right under the statute and that's where I guess I need your help because when I look at the definitional provision 27 dash 1 dash 307 1 C I don't know if you have that in front of you I hope you do okay it seems to me that this forgiveness by the hospital gets excluded from the definition of a collateral source payment under the Montana statute which means that it cannot be deducted from the plaintiff's recovery and so we're just back to the traditional common law rule which means that she she recovers everything so that's what I need your help because if you can't explain to me why that's wrong I would be prepared to rule against your position here and and you're you're saying that that the reason why why you why that's excluded under one C is because it because it isn't a payment because it's the last clause except gifts or gratuitous contributions or assistance it seems to me that's what what this qualifies as under the except clause and so it's excluded from what what is defined under Montana law as a and if you go back to the 308 statute those are the only payments that get deducted so it seems to me you've got here a gratuitous you know a gift or produce gratuitous contribution that gets excluded so anyway can you help me understand how one C works or doesn't work here well I don't know that there's any this isn't an argument that the plaintiffs have made so I but I think there would be a question about obviously it's called charity care but the the hospital is as a nonprofit hospital has an obligation to do a certain amount of charity care and there's a reason for that gets a gets a deduction so there may be a question as to whether or not it is that this would count as a as gratuitous on behalf of the hospital and and again I would go back to our earlier argument and I know you disagree with it but I would go back to to the earlier question about the to say whether or not given that the only bill that the plaintiff received was I guess a zero balance bill whether whether or not we even get to the the question be is the gift or gratuitous contribution a language you know designed for for when your rich uncle or Bill Gates writes you a check for a hundred thousand to help you out as opposed to someone taking care of you and simply not billing you is that is that a gift but that the statute contemplated that closer to your way out of that yes I think that is that is that is better stated than than I did and again we'd be happy to brief this issue again this is not an issue that that is raised in any of the briefing here or in the court below and and we'd be happy to get a more more concerted answer to it because that is that isn't something that I thought a lot about prior to this so so I don't think it was raised that that issue was raised we're happy to do a post-trial briefing on it but that's the best answer I can give you at this point no further further questions will ask for the court to affirm okay let's give the appellant one minute for rebuttal collateral source statute I think that the 27 1307 sub C definitional point about gratuities is very well taken but it's also clear from the jet from the primary definition in the first section of that statute your honor that the payments and there was no payment here but I would also know circling back to the meat case that this case specifically finds that the full medical bill is relevant to the determination of the reasonable value of the medical services even in an account even in a case where most of those expenses were forgiven by the hospital and in that case it was pursuant to a PPO contract or statutory reimbursement schedule and if you and I would call the McKinnon dissent was rejected by six of the judges and while the McKinnon dissent closely tracks the government brief and the district court decision in this case and relies on Newberry and Conway there is a paragraph that suggests that the dissent even would agree with our position and it is paragraph 34 and she says what her real problem was in that case was that the hospital had agreed before the services were rendered not to accept that money whereas in this case the hospital did not have any such agreement and three months passed between the rendering of the services and when the hospital made a decision under charity to forgive this bill and so the bill was incurred there was a detriment and I would also ask the court to look at our public policy arguments or our considerations of the implications of this ruling with respect to that detriment because here we have some excuse me your honor over the time that I allotted the extra time I allotted you I apologize thank you we ask that the court reverse and reinstate the medical bills for the reasonable value of medical services okay thank you very much counsel we appreciate your arguments this morning thank you
judges: Boggs, Paez, Watford